UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 7:20-CR-23-REW |
| v. | ) ) ) | OPINION & ORDER |
| EUGENE SISCO III, | ) ) ) ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Eugene Sisco moves to dismiss the Indictment pursuant to Fed. R. Crim. P. 12. DE 49 (Motion); DE 1 (Indictment). The Government responded in opposition. DE 53. The motion to dismiss, filed in August of 2021, is inexcusably late. *See* DE 21 at ¶ 4 (scheduling defensive motions to be filed no later than 30 days after arraignment); *see also* DE 19 (noting initial appearance and arraignment taking place on December 17, 2020). "A pretrial motion made pursuant to Federal Rule of Criminal Procedure 12(b)(3) is untimely if filed after a deadline set by the district court pursuant to Rule 12(c)(1)." *United States v. Trujillo-Molina*, 678 F. App'x 335, 337 (6th Cir. 2017) (citing Fed. R. Crim. P. 12(c)(3)). Sisco does not explain, and the Court **DENIES** the tardy entreaty. A merits review yields the same result. Even if the motion were properly filed, a jury must resolve the factual questions threaded throughout the case and thus determine whether Sisco is a fraudster as charged or an innovative businessman in the opioid addiction treatment world. Accordingly, the Court **DENIES** DE 49.

Sisco owned and ran a urine drug testing laboratory and a number of health care entities specializing in addiction recovery. DE 1 at ¶¶ 21–23. A federal grand jury indicted Sisco on

1

November 18, 2020. The Indictment alleges that Sisco violated 18 U.S.C. § 1343 when, through false pretenses and concealment, he submitted Medicaid claims for Medication Assisted Treatment services that had already been billed to patients and/or when he direct-billed patients under false pretenses (Count 1) and violated 18 U.S.C. § 1347 when he submitted Medicaid claims for medically unnecessary urine drug testing. *Id.* at ¶¶ 28–34 (Count 2).

The federal wire fraud statute, 18 U.S.C. § 1343, states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. The federal health care fraud statute, 18 U.S.C. § 1347, states:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
>> (1) to defraud any health care benefit program; or
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1347.

Sisco claims dismissal is appropriate because the Government has failed to sufficiently plead wire fraud or health care fraud. DE 49 at 11–14.[1] Sisco also claims entrapment by estoppel and that the Indictment violates his constitutional right to contract freely. *Id.* at 14–21.

---

[1] Sisco oddly asserts that the Government misled the Grand Jury or provided it misinformation. The Grand Jury's probable cause finding is immune from inquiry. *See Kaley v. United States*, 134 S. Ct. 1090, 1098 (2014) ("The grand jury gets to say—without any review, oversight, or second-

Federal Rule of Criminal Procedure 12(b) states that a party must file a pretrial motion, as to certain available defenses, if the motion "can be determined without a trial on the merits." This includes the defense that an indictment is defective for "failure to state an offense." *Id.* at (3)(B)(v). A Rule 12(b) motion to dismiss is determinable so long as "it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Further, a court may resolve a Rule 12(b)(3)(B)(v) motion to dismiss for failure to state an offense if the facts are "virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." *United States v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976).

Under Rule 7(c)(1), an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and if it "enables him to plead an acquittal or conviction in bar of future prosecutions of the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (citing *Hamling v. United States*, 94 S. Ct. 2887, 2907 (1974)). In both Counts, the Indictment easily passes muster.

Sisco first argues that the Indictment fails to sufficiently plead wire fraud and health care fraud. A wire fraud allegation requires proof "that 'the defendant devised or willfully participated in a scheme to defraud[,] . . . used or caused to be used an interstate wire communication in furtherance of the scheme [,] . . .and . . . intended to deprive a victim of money or property.'" *United States v. Kennedy*, 714 F.3d 951, 957–58 (6th Cir. 2013) (quoting *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir.2010) (internal quotation marks omitted)). A health care

---

guessing—whether probable cause exists to think that a person committed a crime."). As such, that gambit plainly fails.

3

fraud allegation requires proof that "a defendant '(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud.'" *United States v. Mahmud*, 541 F. App'x 630, 634 (6th Cir. 2013) (quoting *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir.2008) (internal quotation marks omitted)). The Indictment closely tracks the statute, as to the content of Count 1 and Count 2, detailing the particular conduct alleged to satisfy the elemental requirements. The contentions are sufficiently detailed and, when paired with the legal assertions, state an offense under both pleaded statutes.

Sisco argues that "[t]he Indictment contains numerous false and misleading statements" with regard to both claims. DE 49 at 11. In other words, Sisco challenges the factual content of the Indictment. "[D]istrict courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions *so long as the trial court's conclusions do not invade the province of the ultimate finder of fact*." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (emphasis added). Sisco's many bold avowals—as examples only, that he engaged in no misrepresentations or fraud, DE 49 at 6, that he did not receive cash patient payments for Medicaid services, *id.* at 5, that Renew Behavioral Health is truly a distinct entity for the purposes of counselling services, *id.* at 6–7, that Sisco did not effect blanket UDT protocols, *id.* at 8—are matters factually disputed and thus reserved for the trier of fact. Accordingly, his sufficiency challenge, which would require the Court to credit Sisco's pretrial narrative, fails.

Sisco attempts to frame his factual challenges as undisputed by claiming that the Indictment is inconsistent with the Government's knowledge. For example, Sisco argues that "[t]he Government is well aware, despite its misinformed statements in the Indictment, that Sisco did not

4

receive both Medicaid payments and direct patient payments for physician services." DE 49 at 11. The Government rebuts this factual retelling in its response. *See, e.g.,* DE 53 at 6 ("As an initial matter, the United States expects the testimony of the patient witnesses to be that they were told the cash charges were required for a variety of reasons, not just for counseling, and none of those reasons were accurate."). Further, the United States specifically contends that a) the Renew clinic billed Medicaid and took patient cash for the same MAT services, despite the Medicaid preemptive rules and b) the Renew counselling services came from the same functional entity and generated direct patient-cash payments, again in contravention of Medicaid rules. The facts are not "virtually undisputed[.]" *See Jones*, 542 F.2d at 665. The jury will sift the proof, including the ambiguous Statement of Financial Responsibility[2], and have its say.

     Of course, the case is one alleging fraud. While the Medicaid processes and rules surely will form a backdrop, the counts at issue, at bottom, allege that Sisco intentionally engaged in fraudulent conduct relative to Medicaid and patient billing and relative to the UDT protocol. The fraudulent conduct cited includes lies by Sisco (DE 1 at ¶¶ 31.c, 31.d, 31.g, 32, 34), concealment by Sisco (*id.* at ¶ 31.e.) and false representations or descriptions by Sisco (*id.* at ¶¶ 31.f, 31.h). The Indictment directly asserts that Sisco himself knowingly devised and executed the schemes to defraud; the jury will evaluate the elements under proper instructions.

     Sisco's basis for dismissing the health care fraud count is equaling unavailing. Sisco claims the Government failed to "present the date of the alleged blanket order, to which patients the alleged blanket order applied, copies of the screens obtained by the blanket order, or any scintilla of evidence that the alleged blanket order exists or that it originated from Sisco." DE 49 at 13. The

---

[2] A document that shows significant entity coordination or blur, verifies a separately billed cash component to the clinic of an unknown purport, and arguably treats the counselling element (with its cash character) as a required part of the program.

Government represents that "[c]opies of urine drug test results forms produced as a consequence of the blanket orders have been provided in discovery, as has Medicare and Medicaid claims data reflecting claims for reimbursement by Toxperts for the medically unnecessary tests." DE 53 at 14. The Rules do not require the Government to prove its case within the four corners of an otherwise valid indictment.

The Indictment here puts Sisco on notice of the factual basis for the charge. It alleges the dates (and location, Pike County) of the scheme, January 1, 2016, through February 18, 2020. DE 1 at ¶ 34. It alleges that Sisco caused all patients seeking treatment at one of his facilities to provide a urine sample each time they visited a clinic. *Id.* at ¶ 24. It alleges that Sisco, sole owner and operator, implemented the blanket order for all patients to undergo presumptive and definitive testing. *Id.* at ¶¶ 26–27. It alleges that Sisco referred all tests to his laboratory, Toxperts. *Id.* at ¶¶ 24–25. It alleges that Sisco billed Medicaid for the laboratory testing. *Id.* at ¶¶ 26–27. The Indictment charges that the tests, under this scheme (a blanket approach, as detailed), were by definition not medically necessary, *id.* ¶¶ 16–17; Sisco billed Medicaid despite the structural flaws. These allegations are sufficient to survive the Rule 7(c)(1) hurdle.

Sisco next claims he is entitled to the rare out of entrapment by estoppel. "To determine the availability of the defense, the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair." *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992). The Court cannot, at this stage, assess the defense, even at the threshold. First, the Government disputes the legitimacy of the foundational e-mail Sisco attached to his motion. *See* DE 53 at 9–10. Second, the Government contends that, per Sisco's business practices, he hardly heeded the contained advice.

*Id.* at 11. Finally, the Government believes the conduct unreasonable, per *Levin*, due to "multiple subsequent notices the Defendant received advising him that his clinics were operating illegally." *Id.* On this highly contested and debatable record[3], the Court sees no basis for relief pretrial and instead will consider the proffered defense, and its effects on the charges, if any, with the benefit of a fulsome trial record. Ultimately, if the defense has legs enough, the jury will make the factual decisions presented.

Finally, Sisco states that the Indictment infringes on his constitutional right to freely contract. "The plain language of the Contracts Clause itself affirms that it applies only if a *state* or *local law* interferes with existing contracts. In other words, the Contracts Clause does not apply to the federal government." *United States v. May*, 500 F. App'x 458, 465 (6th Cir. 2012) (first citing U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . law impairing the Obligation of Contracts."); then *Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247, 1253 (7th Cir. 1987); and then Erwin Chemerinsky, *Constitutional Law* 629 (3d ed. 2006)). Regardless of this problem, the Court sees no contractual impairment in this case. The Indictment alleges fraudulent behavior. Sisco frames the argument to suit him, but freedom of contract (if it includes the novel freedom against contract) surely does not mean freedom to engage in wire or health care fraud. The presumption of innocence will shroud Sisco, but the jury will assay his behavior and business choices as it decides the facts on a proper field of law and evidence.

Accordingly, the Court **DENIES** DE 49. The case will proceed.

---

[3] Questions exceed answers here. Would the claimed speaker have the power to estop? *United States v. McCormick*, 517 F. App'x 411, 414 (6th Cir. 2013) ("But 'representations or assurances by state or local officials lack the authority to bind the federal government to an erroneous interpretation of federal law.'" (quoting *United States v. Ormsby,* 252 F.3d 844, 851 (6th Cir. 2001)). What here would be the estoppel scope? The letter does not suggest that fraud, concealment, artifice entities, and false billing are permissible. Again, the Court merely notes without trying to answer, pretrial, these imponderables.

This the 7th day of September, 2021.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge