UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE
CRIMINAL ACTION NO.: 7-20-CR-23-REW

UNITED STATES
OF AMERICA                                                                                          PLAINTIFF

V.

EUGENE SISCO III                                                                                  DEFENDANT

*ELECTRONICALLY FILED*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY TO UNITED STATES'S RESPONSE TO DEFENDANTS MOTIONS FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

Comes now the Defendant, Eugene Sisco III, by and through counsel, and for his Reply to the United States' Response herein states as follows:

That the Defendant would reiterate his arguments contained in his original Motions for Judgment of Acquittal and Motion for New Trial as if specifically stated herein, and files this Reply to address more specifically, statements/arguments made by the United States in its Response.

Contrary to the Government's argument, the evidence presented at trial is insufficient to sustain a conviction under the Wire Fraud statute, wherein the Government did not present evidence sufficient to establish that the Defendant's conduct of accepting cash somehow affected interstate commerce. The evidence failed to prove that the essential element contained in the Wire Fraud statute of "using or causing another to use a wire communication in interstate commerce in furtherance of the scheme".

The Defendant's submission of reimbursement for medical services was not required to be routed outside the Commonwealth of Kentucky. The Defendant's request for such reimbursement is, and was, made directly to the Kentucky state department of Medicaid. All

processing, decision making, and points of administrative discretion affecting such reimbursement took place within the Commonwealth of Kentucky. The receipt of such cash payments in no way affects interstate commerce. Again, contrary to the Government's contentions no instances of double-dipping, i.e. getting paid twice for the exact same services, actually occurred. Further, The Defendant's facilities for approximately seven (7) years received scheduled auditing and no instances of "Double-dipping" were found, nor was the Defendant's companies ever sanctioned or fined for wrongdoing. See testimony of Tammy Wright's testimony CE114, Day 1, Page # 173-187, and testimony of Jeff Hensley, (CE – 115, Day 3, Page# 79-86), counselor with BHP, who also said that there may have been one instance of double-dipping, however, this information was reported to Alexandria Sisco Allen, and not the Defendant.

There was no evidence presented that the Defendant received cash payments and billed for Medicaid reimbursement for the exact same services. Any evidence used by the Government at trial was at best confusing, as most witnesses presented testimony that they were not aware of any instance of double-dipping, that is charging cash, and asking for reimbursement, for the exact same services. While the government would have the Court believe the Defendant was solely responsible for management and operations of the ASAP, Renew, and Toxperts facilities, Hensley thought of Allie as a decision making when he testified that the only single instance of possible double dipping was reported to Allie Sisco Allen.

As it relates to the essential elements of Health Care and Wire Fraud, the Government must have shown, with sufficient evidence, that the instrumentality itself is an integral part of the interstate system. Weiss v. United States, 308 U.S. 321, 327 (1939). It is evident that the Government wished to produce evidence of double-dipping because such evidence is key to

establishing the essential interstate commerce element, yet the evidence was insufficient to prove double-dipping occurred, or at least occurred to such a degree as to have purpose and intent of fraud behind it. The Government's assumption of a connection to interstate commerce is a misnomer because there is no interstate commerce attached to any of the facts in this case, or the trial itself. There is no nexus. This connection has been an assumption that has improperly invaded the province of this indictment and unduly charted a path for trial.

In Jones v. United States, 529 U.S. 848 (2000), the Court stated that arson of a private residence does not affect interstate commerce, even though a residence was insured and mortgaged through out of state entities. Applying the same analysis to the case at hand, it appears that the location of the out of state company providing such reimbursement/pay-out, i.e. Medicaid, is not an integral part of interstate commerce and does not sufficiently prove the essential element of Wire Fraud.

Similar cases involving prosecutions for Hobbs Act violations, in U.S. v. Parker, the Court stated that the Government must prove that the offense affected interstate commerce. Because this is an essential element of the offense of the federal charge, the Jury must be instructed that they must find that the charged offense affected interstate commerce, and that failure to do so is reversible error. In the instant case, there is no specific instruction charging the jury with the task of finding that the Defendant's conduct affected interstate commerce.

In United States v. Mann 493 F.3d 484 (5th Cir. 2007), here the Defendant was convicted of various offenses, including mail fraud, wire fraud, and Hobbs Act violations, based upon that Defendant stealing motorists' speeding ticket money. Because the Government failed to prove that some of the motorists were traveling interstate, those counts had to be dismissed because of a failure to prove a sufficient nexus to interstate commerce.

Further, the Defendant has never been terminated from the Medicaid system and throughout the relevant timeframe as laid out within the Indictment, any audits from the Medicaid system did not result in the Defendant's company being sanctioned, fined, or terminated. (See testimony of Tammy Wright CE114, Day 1, Page # 173-187).

The Government, (1) failed to present any evidence that the Defendant's conduct of requiring patients to pay cash for certain services was illegal conduct, under Kentucky Administrative Regulations or Medicaid (Due Process Clause requires that Defendant's be given fair warning of what is illegal). The letter sent out by Medicaid etc., stated that termination as a provider was the punishment. The Federal Government delegated and recognized promulgation of Medicaid Rules to the States, as well as setting forth the punishment for any violation of such rules. The Commonwealth of Kentucky, by sending out the letter to the Defendant setting forth the punishment for charging cash, as "termination" from continual credentialed status. Therefore, under the 10th Amendment to the U.S. Constitution, criminalization of such conduct is now precluded.

The Government presented insufficient evidence that the Defendant's decision not to credential his counseling services as a Medicaid provider was a criminal act. The government improperly used the Kentucky Administrative Regulations to set forth an improper inference to the jury that the Defendant was in violation, where in fact the Defendant was not required by law to credential as a provider. So, no law was violated in this context. Despite statements in the Response that Defendant's counseling service was credentialed by Medicaid; it was not. No evidence was ever presented showing that BHP was a credentialed company with Medicaid.

Under the Jury Instruction number 18 the last paragraph is disjointed and inconsistent with the above portion of the same instruction, wherein it forces the jury to assume that in order

for drug testing to be considered "reasonable and medically necessary" that Medicare and/or Medicaid must deem it so, and fails to consider that a physician may deem a urine test reasonable and medically necessary without seeking reimbursement from Medicare and/or Medicaid. The verdict in this matter must be vacated and a new trial granted because the instruction should be struck down as being void for vagueness. Grayned v City of Rockford, 408 US 104 (US 1972).

    Pursuant to the Federal Rule of Criminal Procedure 32.2(b)(5(A) which discusses the forfeiture phase of the jury trial. Under this rule, there is a duty by the Court at some specific time prior to the jury deliberations, that the Defendant be given the option whether to retain the jury to conduct a forfeiture trial. The Government's position that (1) jury determination of forfeiture is not protected and (2) that they are only seeking money judgment and not specific asset forfeiture. However, the indictment simply states that government is seeking forfeiture, it was never, prior to the verdict, stated by the government that they are only seeking money judgment. Now, that the verdict is rendered it is convenient to simply state we are only seeking money judgment as it bolsters an argument that the jury is not required.

    For the reasons stated herein, and of those within his original Motions for New Trial and Judgement of Acquittal, the Defendant prays for the appropriate Order of the Court.

Respectfully submitted,

*/s/ Jonah L. Stevens;*
*/s/Justin C. Hamilton*
Co-Counsel for the Defendant
PO Box 1335
Pikeville, Ky 41501
justinhamiltonlaw@gmail.com
606-213-5299

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was filed electronically with the Clerk of the Court this 27th day of January, 2022. Notice of this filing will be sent electronically to all counsel of record through the Court's electronic filing system.

*/s/ Jonah L. Stevens*

*/s/Justin C. Hamilton*