**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE**

**CRIMINAL ACTION NO. 7:20-cr-00023-REW**
**(Civil Action No. 24-34)**

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**V.**         **RESPONSE OF UNITED STATES IN OPPOSITION
TO SISCO'S MOTION TO VACATE**

**EUGENE SISCO III**                                                  **DEFENDANT**

\* \* \* \* \*

This Court should deny Sisco's 28 U.S.C. § 2255 motion because he is unable to show that he received ineffective assistance of counsel, or that the Court lacked subject matter jurisdiction over the health care fraud and wire fraud offenses.

## LEGAL STANDARDS

To prevail on an ineffective assistance of counsel claim, Sisco bears the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A § 2255 petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel. If the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697. A petitioner bears the burden of proving his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To show deficient performance, a defendant "must prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

To prove prejudice, a defendant "must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different.'" *Dado*, 759 F.3d at 563 (alteration in original) (quoting *Strickland*, 466 U.S. at 694). "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *United States v. Munoz*, 605 F.3d 359, 377 (6th Cir. 2010) (alteration in original) (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Dado*, 759 F.3d at 563 (quoting *Strickland*, 466 U.S. at 694). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). Proving ineffective assistance of counsel "is *never* an easy task." *Carter v. Parris*, 910 F.3d 835, 838 (6th Cir. 2018).

**FACTUAL AND PROCEDURAL HISTORY**

"Eugene Sisco III owned medical clinics that treated individuals struggling with opioid addiction. Sisco's clinics provided a collection of services . . . includ[ing] outpatient physical examinations, counseling, urine drug testing (UDT), and prescriptions for Suboxone, a medication used to treat opioid dependence." *United States v. Sisco*, No. 22-5202, 2023 WL 119398, at *1 (6th Cir. Jan. 6, 2023). Sisco's businesses were enrolled as providers in the Kentucky Medicaid program. Kentucky Medicaid prohibited providers, including Sisco's clinics, from charging Medicaid patients for services covered by the Medicaid program; instead, it required that such services be billed to Medicaid. *Id.*; *see also* 907 KAR 3.005, Section 2(c) ("If a provider renders a Medicaid-covered service to a recipient, regardless of if the service is billed through the provider's Medicaid provider number or any other entity including a non-Medicaid provider, the recipient shall not be billed for the service.").

Despite knowing of this prohibition against charging Medicaid patients for Medicaid-covered services, Sisco continued doing so for years. *Sisco*, 2023 WL 119398, at *1. "To cover his tracks, Sisco told the clinic's patients that the payments were required because Renew Behavioral Health, a purportedly 'independent company' that supplied services to Sisco's clinics, was not a Medicaid provider. Renew, however, existed only on paper, seemingly created by Sisco for the sole purpose of obtaining patients' out-of-pocket payments. All services supposedly done by Renew were in fact performed by employees of Sisco's clinics." *Id.* As the Sixth Circuit described it, "Renew was functionally a shell

corporation Sisco created. It existed only on paper to provide the illusion that an independent non-Medicaid provider was administering services to clinic patients, when, in reality, Sisco's Medicaid-eligible patients were receiving care from a Medicaid provider." *Id.* at *3. Through this scheme of charging patients cash for services that were already covered by their Medicaid benefits, Sisco obtained more than five million dollars from his patients. *Id.* at *1.

Sisco also engaged in a health care fraud scheme. In addition to owning the clinics, Sisco also owned a toxicology lab that could perform UDT, called Toxperts. *Id.* at *2. At Sisco's direction, patients at his substance abuse treatment clinics underwent a point-of-care UDT. Those urine samples were then sent to Toxperts for a "redundant, expensive screening test." *Id.* at *4. After the redundant screening test, "Sisco required all initial screening tests to undergo an otherwise rarely needed confirmation test." *Id*. In October 2019, around the same time that Sisco stopped his cash-for-services scheme, he accelerated the UDT testing and required all clinic patients to submit to weekly UDT, even though "there was no medical need to test weekly patients who were compliant with their treatment." *Id.* at *2. This resulted in "a spike in [Medicare and Medicaid] reimbursements after Sisco stopped seeking cash from his clients." *Id.*

In order to be considered medically necessary, and thus payable by the Medicare and Medicaid programs, UDT must be ordered by a physician or other qualified medical professional. *See* 42 C.F.R. § 410.32(a) ("Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary."); 907 KAR 1:028, Section 2

4

("The department shall reimburse for a procedure provided by an independent laboratory if the procedure . . . [i]s prescribed in writing or by electronic request by a physician . . . ."). However, "all of this [UDT at Toxperts] took place without any physician orders for UDT from Sisco's clinics." *Sisco*, 2023 WL 119398, at *4. Instead, it was all done at the direction of Sisco, who was not a doctor or medical professional of any kind.

Thereafter, "a federal grand jury charged Sisco with one count of wire fraud (for the cash payment scheme) and one count of health care fraud (for the urinalysis scheme). After a six-day trial, a jury found Sisco guilty on both counts." *Id.* at *1. He was sentenced to 125 months' imprisonment and ordered to pay $5,699,795.70 in restitution. *Id.* at *2. Sisco appealed, challenging the sufficiency of the evidence, the district court's admission of certain proof under Rule 403, a jury instruction, and the fact that the loss amounts were determined by the district court instead of the jury. The Sixth Circuit rejected all of Sisco's arguments and affirmed his conviction and sentence. *Id.* at *2-5.

Recently, Sisco filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, citing four bases for relief that can be grouped into categories of ineffective assistance of counsel and subject-matter jurisdiction. [R. 213: Motion.] Sisco first claims that Attorney Stephen Owens, his trial counsel, was ineffective for failing to present evidence of a Kentucky regulation setting forth minimum UDT requirements for physicians who prescribe buprenorphine drugs like Suboxone, thus prejudicing his ability to defend against the health care fraud charge. [*Id.* at 5614-15.] Sisco similarly contends that Attorney Owens was ineffective because he failed to introduce evidence that Renew Behavioral

Health was an independent company that provided counseling services to clinic patients, and was permitted to charge patients cash because it was not a Medicaid-enrolled provider. [*Id.* at 5618-19.] According to Sisco, such proof would have negated the jury's finding of fraudulent intent with respect to the wire fraud scheme. Sisco next claims that the existence of a state regulation regarding minimum UDT testing requirements deprived the district court of subject matter jurisdiction over the health care fraud offense. [*Id.* at 5616-17.] He also claims that because Renew Behavioral Health was not a Medicaid provider and could have charged patients cash for its services, the district court lacked subject matter jurisdiction over the wire fraud offense. [*Id.* at 5620.] These arguments lack merit and are addressed in turn below.

## ARGUMENT

*Counsel Was Not Ineffective In Defending The Health Care Fraud Charge*

There was nothing objectively unreasonable about Attorney Owens' defense of the health care fraud charge, particularly as it relates to arguments regarding 201 KAR 9:270, the regulation Sisco claims would have "dissipate[d] the inference that Toxperts, LLC practiced unnecessary medical treatment." [R. 213: Motion at 5615.] 201 KAR 9:270 sets forth professional standards for prescribing and dispensing buprenorphine by physicians licensed by the Kentucky Board of Medical Licensure. Among other things, it includes minimum urine drug testing frequencies that doctors should order for their patients who are prescribed buprenorphine. *See* 201 KAR 9:270, Section 2, 4(e)(5)(f). However, Sisco's criminal health care fraud liability was predicated on the fact that Sisco, rather than any of

the physicians working for his clinics, determined the nature and frequency of UDT for patients at the clinics. [*See* R. 1: Indictment at 6-7 ( ¶¶ 23-27); R. 141: Opinion and Order Denying Rule 29 Motion at 3314-16 (summarizing evidence of absence of physician order for UDT).] The regulation cited by Sisco could only have been relevant if doctors were ordering the UDT, but they were not. His entire scheme depended on a subversion of the normal doctor-driven UDT paradigm reflected in 201 KAR 9:270.

Moreover, the UDT Sisco caused Toxperts to perform went far beyond the basics prescribed in that regulation. Subsection 4(e)(5)(f) states that "[a] patient in early stages of treatment shall be tested at least once weekly and as the patient becomes more stable in treatment, the frequency of drug testing may be decreased, but shall be performed at least on a monthly basis. Individual consideration may be given for less frequent testing if a patient is in sustained remission." The jury heard evidence that, at Sisco's direction, all patients in his clinics underwent (a) a point-of-care test at the clinic, (b) a redundant and more expensive screening test at Toxperts, and (c) an even more expensive confirmation test at Toxperts to confirm the presence of buprenorphine and any illicit substances detected on the screen. *Sisco*, 2023 WL 119398, at *4. As the Court observed, "[r]equiring the secondary (lab) screen and then a confirmation on every positive yielded substantial fiscal results. Toxperts, Sisco's captive lab, collected over $4 million for UDT from 2016 through 2020." [R. 141: Opinion and Order at 3315 (footnote omitted).] And when Sisco's cash-for-services scheme dried up in the fall of 2019, he ordered all patients – even ones who were stable and in sustained remission – to come to the clinics for weekly UDT.

7

[*Id.*]  The doctors at his clinics testified that this was his decision, not theirs, and that such testing was not medically necessary for stable patients.  [*Id.*]  Trumpeting this regulation to the jury only would have highlighted the discrepancies between legitimate UDT and the UDT ordered by Sisco, and would have bolstered the government's argument that "as a non-physician, it was Sisco that authored and implemented a system to blanket test – each patient, each sample – in a manner that focused on fee generation, not medical necessity."  [*Id.*]  It was reasonable for Attorney Owens not to do so.

Finally, Attorney Owens obtained the services of an expert in addiction medicine, Dr. James Patrick Murphy, who testified in Sisco's defense, and informed the jury that Kentucky regulations establish minimum UDT requirements.  [*See* R. 117:  Dr. James Murphy, TR (Trial Day 5)  at 1970.]  While Dr. Murphy did not cite specifically to 201 KAR 9:270, when asked by Attorney Owens about the frequency of drug testing, he testified that "Kentucky has regulations about how many drug screens you must do," and went on to describe what he understood to be those state-prescribed standards.  [*Id.* at 1970-71.]  Thus, contrary to Sisco's claim of deficient performance, Attorney Owens *did* introduce evidence of state regulations relating to UDT frequency as a component of the health care fraud defense.  Reflecting the limits of this regulation's relevance to Sisco's situation, Dr. Murphy also testified that such testing "has to be ordered by the doctor."  [*Id.* at 1971.]  The jury heard from the defense expert about the regulation Sisco now points to as exculpatory, and properly disregarded it.

In sum, there was nothing objectively unreasonable about Attorney Owens' use of 201 KAR 9:270 in his defense against the health care fraud charge.

*Counsel Was Not Ineffective In Defending The Wire Fraud Charge*

Sisco claims that Attorney Owens was ineffective for failing to present evidence that Renew Behavioral Health was not a Medicaid provider, and thus was permitted to charge cash to patients for its services without running afoul of the wire fraud statute. [R. 213: Motion at 5618-19.] In doing so, Sisco ignores the fact that such evidence was introduced at trial, that Attorney Owens argued this theory to the jury, and that the jury rejected it. At bottom, this facet of his § 2255 motion simply seeks to relitigate the jury's finding of guilt and the Sixth Circuit's holding that there was sufficient evidence to sustain that verdict.

The evidence at trial clearly showed that Renew Behavioral Health was initially enrolled as a Medicaid provider, and then un-enrolled in mid-2015 at Sisco's direction. [*See* R. 115: Jason Vertrees, TR (Trial Day 3) at 1558-59 (Renew Behavioral Health enrolled as Medicaid provider effective January 5, 2015), 1599-601 (Renew Behavioral Health credentialing lapsed or un-enrolled as of early 2016); R. 117: Stuart Owen, TR (Trial Day 5) at 2107-08; Gov. Ex. 23 (email from Sisco asking Medicaid how to surrender Medicaid credentials).] The evidence also showed that Sisco informed patients that Renew Behavioral Health was a "separate provider" that was not eligible to bill Medicaid, and thus its counseling services would cost a substantial cash payment per month. [*See* Gov. Ex. 8B (Patient Statement of Financial Responsibility).] As the Court noted in summarizing the trial proof, "Sisco asserted, and argued at trial, that these payments were for counseling

9

provided by the entity Renew B[ehavioral] H[ealth], which, from 2015 onward, was not Medicaid credentialled." [R. 141: Opinion and Order at 3305.] Attorney Owens emphasized the point in closing arguments. [R. 118: Stephen Owens, TR (Trial Day 6) at 2218-20.

The jury heard the defense theory proffered by Sisco and Attorney Owens, and rejected it. [*See* R. 141: Opinion and Order at 3310-11 ("Sisco attempted to cover his fraudulent actions by representing that Renew BH provided the counseling and was a separate provider from BHP – the jury quite rightly viewed this construct as a fabrication," and summarizing government proof that Renew Behavioral Health "existed only on paper to support Sisco's scheme of charging cash and billing Medicaid at the same time.").] The jury's verdict was affirmed by the Sixth Circuit, where Sisco challenged the sufficiency of the evidence. *Sisco*, 2023 WL 119398, at *3 ("Any doubt as to Sisco's intent is put to rest by his use of Renew Behavioral Health. Recall that Renew was functionally a shell corporation Sisco created. It existed only on paper to provide the illusion that an independent non-Medicaid provider was administering services to clinic patients, when, in reality, Sisco's Medicaid-eligible patients were receiving care from a Medicaid provider. As the jury learned, Sisco altered Renew's status as a Medicaid provider shortly after learning about Medicaid's rules against cash payments. All things considered, Sisco's use of Renew further confirms his intent to fraudulently obtain payments from clinic clients."). A 2255 motion is not the forum to relitigate the jury's verdict or the Sixth Circuit's conclusions. *See United States v. Hentzen*, No. 5:13-CR-94-JMH, 2017 WL 11482342, at

*4 (E.D. Ky. Sept. 19, 2017). In sum, Attorney Owens presented the defense Sisco now claims he omitted, and his representation of Sisco in defending the wire fraud charge was sufficient. The jury simply did not credit it.

*The Court Had Subject Matter Jurisdiction Over Both Offenses*

Sisco contends, incorrectly, that the existence of 201 KAR 9:270 somehow deprived the Court of subject matter jurisdiction over the federal health care fraud offense. Similarly, he argues that the Court lacked subject matter jurisdiction over the wire fraud offense because "Renew Behavioral Health is not a [M]edicaid service provider." [R. 213: Motion at 5620.] As a threshold matter, these arguments are completely undeveloped and should be denied on that basis alone. *See United States v. Brummett*, 2013 WL 5798013, at *24 (E.D. Ky. Oct 28, 2013) ("A motion under § 2255 must consist of something more than legal conclusions and unsupported factual allegations").

They are also legally unfounded. "Federal district courts have subject matter jurisdiction over all offenses against the laws of the United States." *United States v. Shahulhameed*, No. 5:12-cr-118-KKC-REW, 2018 WL 324728, at *2 (E.D. Ky. Jan. 8, 2018) (citing 18 U.S.C. § 3231). "[T]he jurisdiction power of § 3231 is invoked when an indictment charges that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes, and the indictment uses similar language to the underlying statute." *Id.* (citing *United State v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013)). The indictment against Sisco charged him with violating 18 U.S.C. § 1343, wire fraud, and 18 U.S.C. § 1347, health care fraud, and tracked the statutory language for each section.

11

[*See* R. 1: Indictment; *see also* R. 60: Opinion and Order Denying Motion to Dismiss at 238 ("The Indictment closely tracks the statute, as to the content of Count 1 and Count 2, detailing the particular conduct alleged to satisfy the elemental requirements.  The contentions are sufficiently detailed and, when paired with the legal assertions, state an offense under both pleaded statutes.").]

## CONCLUSION

The Court should deny Sisco's § 2255 petition.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:  s/ Paul McCaffrey
Assistant United States Attorney
260 W. Vine St., Ste. 300
Lexington, Kentucky 40507-1612
(859) 685-4820
Paul.McCaffrey@usdoj.gov

## CERTIFICATE OF SERVICE

On June 26, 2024, I electronically filed this response through the ECF system and mailed this response to:

Eugene Sisco III
Reg. No. 20882-509
FCI Ashland
P.O. Box 6001
Ashland, KY 41105
*Pro Se Defendant*

s/ Paul McCaffrey
Assistant United States Attorney